[Sac. No. 272.   Department One.—January 27, 1898.]

A. C. IRWIN, Appellant, v. COUNTY OF YUBA, Respondent.

COUNTIES—COMPENSATION OF SUPERVISORS—CONSTRUCTION OF STATUTE—ILLEGAL CLAIM FOR SERVICES—ATTENDANCE UPON ANTI-DEBRIS ASSOCIATION.— The compensation of supervisors under the County Government Act, including the compensation "for *per diem* and mileage or other services rendered by them," was not intended to include any claim for services not coming within the duties of the board as prescribed by law; and no compensation can be allowed to a supervisor for services rendered and moneys expended by him as a representative of the board in attendance upon meetings of an anti-debris association formed by several counties to protect lands along the Feather, Yuba, and Bear rivers, against danger and damage from the results of hydraulic mining.

ID.— CLAIM AGAINST COUNTY MUST BE AUTHORIZED BY LAW — BENEFIT IMMATERIAL.—One who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority of law; and it is not sufficient that the services performed for which payment is claimed were beneficial.

ID.—COMPENSATION OF PUBLIC OFFICERS—EXTRA CHARGE NOT PERMISSIBLE.— A person who accepts an office with compensation fixed by law is bound to discharge the duties of the office for such compensation without extra charge.

APPEAL from a judgment of the Superior Court of Yuba County. Edwin A. Davis, Judge.

The facts are stated in the opinion.

W. H. Carlin, for Appellant.

E. P. McDaniel, District Attorney, for Respondent.

CHIPMAN, C.—The complaint sets forth that certain counties of the state, to wit, Yuba, Sutter, Sacramento, Colusa, Glenn, Tehama, Yolo, and Solano, "banded together for self-protection against" certain alleged "danger and damage" arising from the deposit through hydraulic mining operations of "masses of debris, gravel, sand, and other heavy material into the Feather, Yuba, and Bear rivers, filling up the channels of said rivers, thereby causing the same to overflow their banks," thus causing "many thousands of acres of valuable land therein to be entirely destroyed and rendered valueless"; and that said counties formed

an organization prior to the year 1892, which has ever since existed, and still exists, under the name of the "State Anti-Debris Association" for protection against such damage; that said association has, by its efforts, and by legal measures taken to that end, saved to each of said counties large amounts of property from ruin; that during the years 1894, 1895, and 1896 defendant county "contributed as its *pro rata* of the necessary cost and expense for such protection to the said association the sum of two hundred dollars per month for each and every and all of the said months in said years down to the commencement of this action"; that said association during said time held monthly meetings at the city of Sacramento, and that said association consisted "of a combination of committees sent thereto for that purpose from and by the several boards of supervisors of the said several counties"; that the board of supervisors of said Yuba county during all of said time organized itself into several committees for carrying on its business, and, among others, formed an anti-debris committee of said board, of which plaintiff was a member and chairman, and as such met with said association at Sacramento. The complaint then sets out that plaintiff expended, as necessary personal expense in attendance upon said association, the sum of two hundred and fifty dollars, and that he is entitled to the further sum of "fifty dollars as his *per diem* for said attendance." It is alleged that his claim for said amounts was duly filed with the board of supervisors of defendant, and was duly received and audited and found correct by said board, but was rejected, "for the sole reason that the district attorney of said county declared the said claim illegal." The complaint prays judgment against defendant for the amount. A general demurrer to the complaint was sustained, and, plaintiff declining to amend, defendant had judgment, from which plaintiff appeals.

Appellant contends that the expenditure of the moneys for the purposes stated constitutes a county charge, and that plaintiff was the proper person to perform the service and expend the money.

It cannot be pretended that this so-called "Anti-Debris Association" is anything more than a voluntary association of citizens, like many others convened to consider matters deemed by them of common interest; it has no existence beyond the mutual

consent of its members, and from it any of its members may with-draw at any time. The fact that it is made up of a combination of committees appointed by the several county boards of supervisors from their own number can give it no legal existence. Those boards cannot create new offices and prescribe their duties and appoint themselves to fill the offices and perform the duties. Boards of supervisors frequently make appointments of persons (sometimes including one or more of their number) to attend conventions called to consider matters relating to the internal concerns of counties; and, while no authority of law is given them to do this, it has been found a convenient and satisfactory method of obtaining representation at important conferences of the people, and it is universally acquiesced in. But the power is not to be found in any statute, and its assumption would quick-ly lose the common consent if it should be held that the boards could also provide for compensating the services rendered under such appointments. Plaintiff stands in no better or different posi-tion from that of any other appointee of the board selected to act as a member of this debris association, unless it can be shown that the duties thus placed upon him fell within his official duties prescribed by law, and it can also be shown that he may be com-pensated beyond the compensation allowed for the performance of his ordinary duties as a member of the board. No provisions of any statute have been pointed out, and we know of none, making it any part of the duty of a member of the board of supervisors to act as a member of any such association, nor can it be said that to do so is either within any implied powers of a member of such board or necessarily incidental to any granted powers. But, if they were, the law fixes and limits the compensation to be paid. In the County Government Act, section 216 (Stats. 1893, p. 507), it is provided that "the salaries and fees provided by this act shall be in full compensation for all services of every kind and description rendered by the officers therein named (among them the members of the board of supervisors), either as officers or *ex officio* officers, their deputies and assistants, unless in this act otherwise provided," etc.

Appellant relies upon section 51 of this same act, page 365, where it is said that, "All claims against the county presented by members of the board of supervisors for *per diem* and mileage,

*or other services rendered by them,* must be itemized," etc; and it
is claimed that the legislature has thus recognized the payment of
claims other than *per diem* and mileage, and that the clause in
italics was intended to embrace "extraordinary cases which other-
wise would not be provided for."

We do not think that the provision quoted was intended to in-
clude any claim for services not coming within the duties of
the board as prescribed by law. The board was certainly not left
to decide for itself the limit it could put upon expenditures, for
the law was careful to provide that the salaries and fees provided
in the act "shall be in full compensation for all services . . . .
unless in this act otherwise provided." We are not called upon
at this time to say what meaning might, in some possible case
which might arise, be given to the words, "or other services ren-
dered by them"; but we are clearly of the opinion that they do
not include such services as are set forth in the complaint, either
as *per diem* or mileage or otherwise. It is common history that
like associations have been formed in the mining counties, we
may presume with equally sincere motives, to resist the efforts
made by this very Anti-Debris Association, and under claims that
the deposit of debris in the streams named is and was by right
and that great harm would come by preventing such deposit. If
plaintiff's contention be correct, we should have the public funds
of one county used to prevent the consummation of an object
which the funds of another county were being used to promote,
and both claiming under the same general law. Such a result
cannot be permitted, in the absence of positive and clear statu-
tory authority. The act in question, section 230, page 511, speci-
fies what are county charges; they cannot be extended to em-
brace any such claim as this. The duties of the board relate gen-
erally to such as are discharged while in session within their own
county, and to duties imposed upon them when acting as road
commissioners. It certainly cannot be claimed that the services
of plaintiff at Sacramento, while in attendance upon the debris
association, was as a member of the board while in session as
such board, nor as a road commissioner, nor was the claim sued
upon for *per diem* or mileage in either capacity. We are unable
to see why this claim if allowed would not work an increase in
plaintiff's compensation, which cannot be done if we are to regard

the services performed to be part of his official duty; and, if they were not, they were outside all authority of law. (*Dougherty v. Austin,* 94 Cal. 602; and see, also, *Welsh v. Bramlet,* 98 Cal. 222.) It will hardly be contended that the board could delegate any of its powers to this debris association.

Boards of supervisors are frequently asked to give the aid of public funds in their control to objects unknown to the law, but upon grounds of local policy and for what may seem to be at the time for the welfare of the locality, and such expenditures are often acquiesced in by the people. But whenever the courts have been appealed to in these cases, they have uniformly held to the only safe rule—that public officers and municipal boards must keep within the limits of their power as prescribed by law. Many illustrations may be drawn from decided cases; one or two will suffice. In *Andrews v. Pratt,* 44 Cal. 309, the board were authorized to sell certain railroad bonds, and in doing so incurred some traveling expenses, but this court held that the claim could not be paid. In *Domingos v. Supervisors,* 51 Cal. 608, the board appointed one of its members to superintend the construction of a drainage canal. His claim for services was denied.

It may be safely stated as a rule that one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which itself finds authority of law. It is not sufficient that the services performed, for which payment is claimed, were beneficial. Nothing is better settled than that a person who accepts an office with compensation fixed by law is bound to perform the duties for the compensation. Mr. Dillon in his Municipal Corporations, section 233, speaking of this rule, says: "The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay the foundation for extra compensation, would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may, and what may not, be considered strictly official; and if these distinctions are much favored by the courts

of justice it may lead to great abuse." Again, the same author says (section 234): "Not only has an officer, under such circumstances no legal claim for extra compensation, but a promise to pay him an extra fee or sum, beyond that fixed by law, is not binding, though he renders services and exercises a degree of diligence greater than could legally have been expected of him." Our own supreme court is not alone in the position here taken. The doctrine is fully sustained in *Ewing v. Ainger,* 96 Mich. 587. It was held in *Hartson v. Dale,* 9 Wash. 379, that attendance by a member of the board of county commissioners, before the state board of equalization to resist the raising of the county assessment-roll, was no part of his duty as such commissioner and could not be made the subject of a claim against the county. The same doctrine was enunciated in *Board of Supervisors v. Ellis.* 59 N. Y. 620. So, also, in *Moore v. Toledo City Independent Dist.,* 55 Iowa, 654, and numerous other cases which might be cited. We think the judgment should be affirmed, and so advise.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.