[Civ. No. 1818. Third Appellate District.—June 14, 1918.]

IRVING D. GIBSON et al., Appellants, v. COUNTY OF SACRAMENTO, Respondent.

COUNTIES—LEGAL SERVICES—PROSECUTION OF DISTRICT ATTORNEY FOR MISCONDUCT—COUNTY CHARGE.—In view of section 4307, subdivision 3, of the Political Code, services rendered by attorneys at law appointed by a judge of the superior court to prosecute a district attorney for misconduct in office, pursuant to the provisions of sections 758 and 771 of the Penal Code, constitute a "county charge."

ID.—CLAIM AGAINST COUNTY—STATUTORY AUTHORIZATION.—One who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority in law.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge.

The facts are stated in the opinion of the court.

Ralph W. Smith, and Irving D. Gibson, for Appellants.

Hugh B. Bradford, District Attorney, and J. R. Hughes, Deputy District Attorney, for Respondent.

HART, J.—The complaint alleges: The plaintiffs are attorneys at law, engaged in practice at the city of Sacramento; that on the first day of June, 1917, an accusation in writing against Hugh B. Bradford, district attorney of the county of Sacramento, was presented by the grand jury of said county, pursuant to the provisions of section 758 of the Penal Code, which was filed with the county clerk and presented to Honorable Malcolm C. Glenn, judge of the superior court of said county, who, on the seventeenth day of June, 1917, appointed plaintiffs as prosecuting officers in the matter of said accusation, pursuant to the provisions of section 771 of the Penal Code; that plaintiffs accepted said appointment, qualified as such prosecuting officers, and performed all necessary services and duties in the matter, and that said services were rendered at the special instance and request and for the benefit of said defendant; that the fair and reasonable value of said services is the sum of one thousand four hundred dollars; that plaintiffs presented to the board of supervisors of said county their claim and demand for said sum of one thousand four hundred dollars, duly authorized and approved by said judge, which was rejected by said board. A general demurrer to the complaint was sustained without leave to amend and judgment was entered in favor of defendant, from which judgment plaintiffs appeal.

Section 758 of the Penal Code reads as follows: "An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed."

Section 771 of said code is as follows: "The same proceedings may be had on like grounds for the removal of a district attorney, except that the accusation must be delivered by the foreman of the grand jury to the clerk, and by him to a judge of the superior court of the county, who must thereupon appoint someone to act as prosecuting officer in the matter, or place the accusation in the hands of the district attorney of

an adjoining county, and require him to conduct the proceedings."

The sole question presented for decision is, Do such services as were rendered by plaintiffs constitute a county charge?

Section 4307 of the Political Code declares what are county charges, and subdivision 3 thereof reads as follows: "The expenses necessarily incurred in the support of persons charged with or convicted of crime and committed therefor to the county jail, and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law."

It cannot be doubted that "one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority of law." (*Irwin* v. *County of Yuba,* 119 Cal. 686, [52 Pac. 35]; *Woods* v. *Potter,* 8 Cal. App. 41, 45, [95 Pac. 1125].) Nor may the payment of such a claim be allowed upon the theory that the services performed for which compensation is claimed were beneficial. There must be some statutory or constitutional authority for compensation for services rendered to a county, otherwise it cannot legally be paid, however beneficial the services performed may be to the county or the public generally. Unless, therefore, the services performed by the appellants and for which they are here seeking compensation come within the language or the contemplation of subdivision 3 of section 4307 of the Political Code, no recovery can be had for such services, it being conceded that there is no other law or provision of law authorizing payment of compensation for such services.

It follows that whether the appellants are entitled to compensation for the services named must be determined upon what is ascertained to be the true meaning or the legislative intent at the bottom of the language of said subdivision 3, viz.: "And for other services in relation to criminal proceedings for which no special compensation is prescribed by law." Originally, that language was contained in section 4344 of the Political Code, being embraced in subdivision 3 thereof, which then read as follows: "3. The compensation allowed by law to sheriffs and constables for executing process on persons charged with criminal offenses; for services and expenses in conveying criminals to jail; for services of subpoena issued by district attorneys, *and for other services in relation*

*to criminal proceedings for which no specific compensation is
prescribed by law."*    (See Newmark's Pol. Code, 1889.)    It
is very clear that the language herein italicized and which, as
seen, is now a part of subdivision 3 of section 4307 of said
code, originally had reference to the compensation to be paid
to sheriffs and constables for services which might be per-
formed by them and not enumerated and for which no
specific compensation was prescribed.    But, in amending cer-
tain sections of the Political Code relating to the compensa-
tion of county officers, the legislature, as seen, placed the pro-
vision as to services not specially enumerated and for which
no specific compensation has been provided in an entirely dif-
ferent connection from that in which it was formerly or origi-
nally used.    As the provision now stands, we find it, as it was
before, under the heading, "Other County Charges," and em-
ployed in a connection to which it does not appear to have
natural or relevant application.    The two sentences in the
subdivision, although conjoined by the conjunctive word
"and," seem to relate entirely to different and dissimilar sub-
jects, the one involving expenses necessarily incurred in sup-
porting persons charged with or convicted of crime and com-
mitted therefor to the county jail, and the other involving
other services in relation to criminal proceedings for which no
specific compensation is paid.    Obviously, the matter of the
support of the persons mentioned in the subdivision is not a
"criminal proceeding" within the meaning of that phrase as
it is used and referred to in our law.    A "criminal proceed-
ing" means some authorized step taken before a judicial
tribunal against some person or persons charged with the vio-
lation of some provision of the criminal law.    The support of
those charged with or convicted of crime and who are lawfully
incarcerated in the county jail therefor is a duty which the
state or the county, its agent, is required to discharge, and
while it is true that the county officer whose duty it is under
the law to provide such support performs services for the
county, when furnishing such persons with necessary support,
still such services cannot correctly be said to be performed in
relation to a "criminal proceeding" within the true juridical
meaning of that phrase.    It follows, therefore, that the words
"other services" as used in the subdivision cannot justly or
reasonably be held to refer to "services" like or similar to those
referred to in the sentence immediately preceding that con-

taining those words. Indeed, we are unable to conceive of any other services which would be involved in the support of the persons referred to than those specifically mentioned. "Support," in the sense in which that word is used in the subdivision, necessarily means that the persons referred to therein are to be provided with such necessaries as may be required to sustain them under the peculiar conditions by which they are surrounded, including, of course, such necessary medical treatment as may be required, and when such support is provided, there are left no other conceivable services to be performed in that connection. Moreover, there is nothing in the entire subdivision indicating that the "other services" are to be performed by a particular county officer or any particular person. The provision simply declares, in effect, that any other services than those specifically enumerated by the law for which no specific compensation is provided, by whomsoever performed, shall be and constitute a charge against the county. The provision means and was intended to mean something, for that particular language was retained as a part of the law, while the part in connection with which it originally appeared in the Political Code was either entirely eliminated from the code and some other provision for the compensation of sheriffs and constables substituted therefor or was re-enacted in some other connection.

Our conclusion is that there is no natural or logical connection between the two sentences in said subdivision—that is to say, that the language, "and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law," has no reference or application to the language in the same subdivision immediately preceding it or to any of the preceding subdivisions, but that said language was retained as a part of the law to operate as an independent, substantive provision thereof, to cover or meet contingencies which, it was conceived by the legislature, from common experience, might arise, and require the incurring of expense in the prosecution of criminal cases and which human prescience is unable to foresee, so that specific provision for the expenses arising may be made. And, that the provision, in its present form and connection, was designed, *ex industria*, to meet just such cases as the one before us and its language broad enough to include services of the character of those for which the appellants claim the right to be compensated by the county, we

are in no doubt. If this be not true, then why is the provision in the code? What other kind of services is contemplated by or included within that language? Certainly it must be assumed that the provision was enacted and inserted in the code for some purpose. What is that purpose if it be not to provide for the compensation for services such as the appellants performed? Of course, it will not be questioned that an action growing out of either section 758 or section 772 of the Penal Code is a criminal proceeding, and that, therefore, the services performed by the appellants were "in relation to criminal proceedings." (See Pen. Code, sec. 682; *In re Marks*, 45 Cal. 199; *In re Curtis*, 108 Cal. 661, 662, [41 Pac. 793]; *Matter of Shepard*, 161 Cal. 171, 174, [118 Pac. 513]; *People* v. *McKamy*, 168 Cal. 531, 533, [143 Pac. 752]; *State ex rel. McGrade* v. *District Court*, 52 Mont. 371, [157 Pac. 1157, 1158].)

The respondent, opposing the above construction of the provisions of the Political Code under consideration, undertakes to establish an analogy between a case where the court, exercising the authority conferred upon it by section 771 of the Penal Code, appoints an attorney to prosecute a district attorney on an accusation filed against him under either section 758 or section 772 of said code and the case in which the court is authorized by section 987 of the same code to name or assign an attorney to represent and defend the accused where the latter is himself without means to employ counsel and desires the court to assign counsel to defend him. But we perceive no such resemblance between the two cases as requires us to hold that the appellants must be denied compensation for the services performed by them upon the theory supporting the authority vested in trial courts by said section 987.

The central idea—indeed, the pole-star—of every system of laws (in civilized countries) is the preservation and protection of such natural rights of mankind as have not necessarily been surrendered or given up in return for the benefits which men receive from organized society, and surely that system which has failed to provide for the full and complete protection of all the rights of person and property to which every member of organized society, whether rich or poor, when measured by the material things of life, is entitled, would fall woefully short of that degree of perfection which it is possible for man-made government to attain. Our state constitution

has, therefore, specially covered this matter with respect to persons charged with crime. In section 13 of the first article of that instrument it is provided, among other things, that, in criminal prosecutions, "in any court whatever," the party accused shall have the right to appear and defend "in person and with counsel." The federal constitution (article VI) contains a like guaranty. Of course, the right so guaranteed would involve the granting of a special privilege to a particular class if the right to its exercise were confined to those persons charged with crime having the financial ability to employ and compensate counsel—a situation wholly at variance with the fundamental idea and the general spirit of our systems of state and federal governments as outlined by their respective constitutions—and, therefore, in this state, to the end that all men in all circumstances shall have the equal protection of the law, as our constitution commands, the legislature has enacted section 987 of the Penal Code, whereby the trial courts are, as seen, vested with authority, in the case of an impecunious person prosecuted upon a criminal charge, to assign him counsel, selected from the membership of the local bar, to defend him without compensation, or to trust for compensation to the future ability and the disposition of the accused himself to pay for the services rendered. (*Rowe* v. *Yuba County,* 17 Cal. 62; *Lamont* v. *Solano County,* 49 Cal. 158.) The legislature, for obvious reasons, has made no provision for payment for services rendered by an attorney in such a case, although it undoubtedly has the right to make such services a county charge, to be compensated for out of the treasury of the county. Of course, neither in the case of an attorney assigned by the court to defend an impecunious accused, nor in a case where an attorney is appointed by the court to prosecute the district attorney against whom an accusation has been filed, is there any contractual relation thereby or otherwise created or arising between the attorney so assigned or appointed and the county, since the county is not a party to either action and does not control the prosecution of either case, the prosecution in both instances being for the benefit of the county only in so far as it is part of the state, in the name of the people of which, and not of the county, the proceeding in both cases is prosecuted. Therefore, there can be no implied *assumpsit* against the county—no obligation on its part to pay (*Case* v. *Board of Commissioners,* 4 Kan. 511, [96 Am. Dec.

190]), notwithstanding that the legislature, in the exercise of due authority, has made the expenses incurred in public prosecutions charges against the county. In brief, as stated, the whole matter of compensation in either case rests upon the proposition whether there is or is not a statute authorizing payment for the services rendered therein by an attorney assigned or appointed by the court to defend or prosecute the accused, as the case may be.

But, as above intimated, the authority given to superior courts to appoint an attorney to conduct the prosecution of a district attorney against whom an accusation has been filed does not proceed from the theory upon which like authority may be exercised in assigning an attorney to defend a pauper charged with and prosecuted for a crime. The county is not an indigent, but is amply able to compensate (and as of right should compensate) an attorney who is required to perform services which, under other circumstances, it is the duty of the district attorney to perform, and for which the latter is compensated. Naturally enough, therefore, the legislature would, in such a case, make provision for compensating an attorney for services which the law compels him to perform, whether he desires to perform them or not.

There is, as we read the decision, nothing said in the case of *State ex rel. McGrade* v. *District Court, supra,* in conflict with the views above expressed. In that case, under a statute substantially similar in its provisions to section 771 of our Penal Code, the trial court, in a proceeding in which an accusation had been presented and filed against the district attorney, appointed the district attorney of an adjacent county to conduct the prosecution. The latter asked and sued for compensation for his services, but he was denied the right to compensation upon the ground, as stated by the supreme court of Montana, that he had merely performed a duty in prosecuting the case that the law had placed upon him as a district attorney and that the compensation allowed him by law as district attorney covered payment for all services performed as such by him, including services in such a case. The ruling in that case appears to be perfectly sound but it does not fit this case. Under section 771 of our code, the court could have appointed a district attorney of one of the counties adjoining Sacramento to prosecute

the accusation in this case, in which event what is said in the
Montana case would apply here.

It is further argued that the superior court has no author-
ity to incur an obligation against the county, but that such
authority is alone vested in the board of supervisors, referring
to section 4041 of the Political Code, which, in the enumera-
tion of the powers of such boards, contains the following pro-
vision, designated as sudivision 16: ''To direct and control
the prosecution and defense of all suits to which the county
is a party and by a two-thirds vote of all the members, may
employ counsel to assist the district attorney in conducting
the same.''

The foregoing, as is to be noted, refers wholly to suits to
which a county is a party, and, therefore, to civil actions.    A
county is in no sense a party to criminal cases, for they in-
volve ''no interest of the county in any sense, other than such
interest as the county may have in common with any other
county and all the people of the state, in upholding the ad-
ministration of the law.''    (*County of Modoc* v. *Spencer,* 103
Cal. 498, 500, [37 Pac. 483] ; *Conklin* v. *Woody,* 33 Cal. App.
554, [165 Pac. 973].)

The proposition, however, that there is no law authorizing a
judge of the superior court to incur an obligation against or
on behalf of the county is, in a general sense, quite true.    But
the right in the legislature to confer such authority upon the
superior court or the judge thereof, when it may be essential
to the proper transaction of the business of the court, cannot
be questioned; and this right has been exercised by the legis-
lature in the case of the employment and compensation of
phonographic reporters of said courts.    (See Code Civ. Proc.,
secs. 269, 274, 274a.)    By those sections, the judges of the
superior court are not only authorized to appoint and employ
stenographic reporters to take down in shorthand and tran-
scribe the proceedings of their courts, but are authorized to
audit or order the payment of the claims of such reporters as
for their compensation for the services so performed by them.
Indeed, by section 869 of the Penal Code, justices of the
peace, sitting as examining magistrates, are similarly author-
ized to order the payment of claims of shorthand reporters
whom they have appointed to report the testimony and pro-
ceedings taken and had at preliminary examinations.    And,
in a case where, as here, an accusation has been filed against

the district attorney, the legislature has expressly conferred authority upon the superior court to appoint an attorney to prosecute the action. Whether such an appointment amounts only to a mere "assignment" of an attorney to represent the people in the action, as in the case of an attorney "assigned" to defend an impecunious person accused of and prosecuted for some crime, or is an employment in the sense that it places an obligation upon the county or the state to pay for the services of the attorney in the action, must, of course, depend upon whether the legislature has authorized payment out of the public treasury of compensation for such services. The legislature could, obviously, make such services a direct charge against the state and the compensation payable from state funds. On the other hand, it is clearly within the power of the legislature to make such services a charge against the county, as it has made all other expenses growing out of criminal prosecutions charges against the county, and, as declared in the outset of this opinion, we think that this is precisely what the legislature intended to do and has done by the language of subdivision 3 of section 4307 of the Political Code.

The suggestion that the construction herein given subdivision 3 of section 4307 may result in a heavy drain on the county treasury is, of course, no argument against such construction of said section. A proceeding against a district attorney such as the one before us rarely arises, and we may add (more as the opinion of the writer than that of the court) that, if having no stronger reason, legal or moral, for its support than that which prompted this proceeding, no such a move should be made against a public officer, for under such circumstances its result can only be to harass and annoy without the slightest justification a public official who is trying to do his duty as the law lays it down. But, whether meritorious or justified or not, such a proceeding must be disposed of by the court before which it is pending in the manner and mode prescribed by the law, and, when against a district attorney, there is nothing left for the court to do but to appoint either the district attorney of an adjoining county or some other attorney to prosecute the proceeding—in other words, to perform services which, under other circumstances, it would be the duty of the district attorney himself to perform.

Our conclusion is: That the services performed by the appellants are among the "other county charges" contemplated

by subdivision 3 of section 4307 of the Political Code, and that compensation therefor by the county is authorized by the latter part of said subdivision of said section; that the claim for such services is one which must be passed upon by the board of supervisors, in which body is lodged the discretion of determining whether the services for which the claim is made have been performed, and, if so, whether the amount of the claim is or is not reasonable in comparison with the character of the services performed; that if the claim be rejected by the board, then the claimant may finally, as in the case of any other claim against the county and disallowed by the supervisors, either in whole or in part, have recourse to the courts for a judicial adjudication of the claim or the questions thereupon arising.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 12, 1918.