[Civ. No. 6855.   Third Dist.   Aug. 7, 1942.]

PAUL E. MADDEN, as Chief of Division of Narcotic Enforcement, etc., et al., Petitioners, v. HARRY B. RILEY, as State Controller, etc., Respondent.

Robert Clifton for Petitioners.

Earl Warren, Attorney General, Robert W. Harrison, Chief Assistant Attorney General, and Chas. W. Johnson, Deputy Attorney General, for Respondent.

THOMPSON, J.—By means of a writ of mandamus the petitioners seek to require the state controller to allow a claim and to draw his warrant in payment of necessary traveling expenses incurred by the Chief of the Division of Narcotic Enforcement of California, in attending a convention of the Pacific Coast International Association of Law Enforcement, held at Reno, Nevada, August 27, 28 and 29, 1940. The Governor and the Director of Finance of California approved the allowance as required by section 352 of the Political Code. The controller rejected the claim on the ground that the expense was not incurred in the performance of state business. A demurrer and answer to the petition were filed by the respondent. The answer controverts essential facts alleged in the petition. The demurrer asserts that the petition fails to state facts sufficient to justify the issuance of the writ.

The petition alleges that Paul E. Madden, as chief of the Division of Narcotic Enforcement of California, incurred

necessary expenses amounting to $13, in attending the convention of the Pacific Coast International Association of Law Enforcement at Reno, Nevada, on the dates previously mentioned; that the said sum was subsequently paid by the petitioner, Heda M. Goucher, the disbursing officer of said Narcotic Enforcement Division, out of the revolving fund of that department which is maintained for that purpose; that the said expenses of petitioner, Madden, were previously duly authorized and approved by both the Governor and the Director of Finance of the State of California, as required by section 352 of the Political Code, in the following language:

"August 26, 1940.

"Hon. Harry B. Riley
State Controller
Sacramento, California

Dear Mr. Riley:

"Permission is hereby granted to Paul E. Madden, Chief, Narcotic Division, to be absent from the State of California August 27, 28 and 29, 1940, for the purpose of attending a convention of Pacific Coast Law Enforcement officials at Reno, Nevada. It is important that Mr. Madden attend this conference in order that he may confer with narcotic enforcement officials from Washington, D. C., who are going to attend the gathering.

"The expense of this trip is not to exceed $25.00 and is to be paid by the State of California upon presentation of properly certified and itemized bills from the appropriation for the Support of the Division of Narcotic Enforcement.

"Itinerary of trip: San Francisco to Reno, Nevada; and return.

Sincerely,

CULBERT L. OLSON,
Governor of California

Approved:
    J. R. RICHARDS,
        Director of Finance."

The petition further alleges that the purpose for which Mr. Madden attended said convention, which consisted of delegates from twelve states and territories of the United States, and from the national capital at Washington, D. C., was to confer with the said representatives and to cooperate with the peace and narcotic enforcement officers of the United

States to secure uniform and effective administration and enforcement of the narcotic laws of California, and among the several states of this Union.

It is also stated in the petition that there are ample funds duly appropriated and allotted to the special support of the Division of Narcotic Enforcement in the State of California, from which to pay the demand in question; that the claim was regularly presented in due form to the state controller, with the written approval of the Governor and the Director of Finance of California, for auditing and allowance thereof; that the claim was rejected by the controller as unlawful and invalid, on the ground that the services of said officer in attending the Pacific Coast Law Enforcement convention at Reno, Nevada, for the purposes assigned, do not constitute "State business," and that said expenses may therefore not be allowed.

The chief issue to be determined is whether section 352 of the Political Code authorizes the approval and allowance of claims for necessary expenses of the representatives of state departments, in attending conventions inside or outside of the state, for purposes appertaining to the particular business of the department to which they belong. That section reads:

"All heads of departments, chiefs of divisions, assistants, deputies, agents, experts and other employees of a department shall be entitled to receive in addition to their salaries, their actual necessary traveling expenses when away from their headquarters on State business. Actual and necessary traveling expenses shall be allowed such persons when traveling outside of the State, when such traveling and expenses have been approved by the Governor and by the Director of Finance. Except as otherwise expressly provided by any act creating a new department, the members of no State board or commission which is created or continued in force by such act, shall receive any compensation for their services, but they shall be allowed necessary expenses incurred in the performance of duty."

In the present proceeding it is conceded by the respondent that "If the authority for such expenditure exists, funds are available by virtue of the appropriation 'for the support' of the Division of Narcotic Enforcement contained in Section 2 of the Budget Act of 1939. (Stats. 1939, ch. 486, item 157.) No contention is made by respondent that the funds therein appropriated have been exhausted."

Section 352 of the Political Code clearly authorizes the payment of "actual necessary traveling expenses" of heads of departments, chiefs of divisions, assistants, deputies, etc., "when away from their headquarters *on State business.*" When such expenses are incurred in traveling on state business *within the state,* the approval of neither the Governor nor the Director of Finance is required as a prerequisite to the payment thereof; but, under such circumstances, it is the duty of the state controller, incident to his duty to audit and pay such claims, to first determine that the expenses were necessarily incurred by the officer or employee in the performance of "State business." When such necessary expenses are incurred in traveling on state business *outside of the state,* they may not be allowed or paid except when they "have been approved by the Governor and by the Director of Finance." If it appears that an officer or employee mentioned in section 352 has actually incurred necessary traveling expenses *in attending to state business* outside of the state, and that a claim for such amount has been approved for that purpose by the Governor and by the Director of Finance, it is the duty of the state controller to audit the claim and to draw his warrant in payment thereof, as required by law.

The petitioners assert that the second sentence of section 352 authorizes the Governor and Director of Finance to permit officers or employees to recover necessary expenses incurred in traveling outside of the state, regardless of whether the journey is undertaken in the performance of state business. We do not agree with that construction of the statute. In our opinion the entire section deals with necessary expenses incurred in traveling inside or outside of the state, only when the officers or employees are engaged in state business. It is apparent that if the petitioners' construction of that language is correct, the act would authorize the approval and payment of claims of officers or employees for traveling expenses incurred in going to any place in the world, on their own private expeditions, for personal recreation, pleasure or business. The Legislature has no authority to authorize such illegal misappropriation of public funds. That is not a reasonable construction of the statute. We are convinced that section authorizes the payment of traveling expenses, either inside or outside of the state, only when the officers or employees are engaged in state business. The language of that

section appears to clearly indicate that fact. After the first sentence asserts that certain designated officers or employees may recover their traveling expenses "when away from their headquarters *on State business*," the following sentence declares that *"such persons* when traveling outside of the State" [on state business] may recover their traveling expenses, provided their claims are first approved by the Governor and by the Director of Finance. We think the words "on State business," which we have inserted in brackets in the previous sentence, are necessarily implied as a part of that provision. Any other construction would lead to an absurdity and authorize the payment of illegal claims.

■ The petitioners then contend that the second sentence of section 352 renders the validity of a claim for expenses incurred in traveling *outside of the state,* absolutely conclusive upon the state controller, requiring him to draw his warrant in payment thereof, "when such traveling and expenses have been approved by the Governor and by the Director of Finance." It is argued that such approval becomes final and conclusive evidence that the authorized journey was undertaken in pursuance of state business. That conclusion is reached by asserting that it must be presumed the chief executive and the Director of Finance would not approve an illegal claim, and that an exercise of discretion on the part of those officers in approving and allowing the expenditure of funds may not be interfered with by either the controller or the courts. We assume that neither of those officers would knowingly approve an illegal claim, and that their approval does carry with it a prima facie presumption that the claim is valid. But that presumption may be rebutted.

We do not agree with the last-mentioned construction of the effect of the approval by the Governor and the Director of Finance of a claim for traveling expenses. Their approval may raise a presumption that the services were to be performed in pursuance of state business and that the claim is valid, but it does not become conclusiv. of those facts so as to deprive the controller of his duty to audit the claim and to refuse payment thereof if it appears to be illegal. The state controller is constituted by law the ultimate fact-finding tribunal whose duty it is to pass upon such claims and to reject them if he finds them to be illegal. (§ 433, Pol. Code.) This does not mean that the Governor or the Director of

Finance has approved or allowed an illegal claim. It may merely mean that the claim is illegal for the reason that the services for which it was previously approved were not actually performed, or that the convention was held for a purpose entirely different from that which was represented by the claimant. Under such circumstance, it is the duty of the controller to reject the claim.

It will be observed that section 352 requires the approval by the Governor and the Director of Finance of two different features of the claim, namely, the privilege to travel outside of the state, and the right to incur specified expenses in the course of that journey. That section declares that said traveling expenses, outside of the state, may be paid only when *"such traveling and expenses* have been approved."

In the present case the approval of the Governor and the Director of Finance, authorizing Mr. Madden to attend the convention at Reno "in order that he may confer with narcotic enforcement officials," and limiting his expenses, so incurred, to $25, was given in writing on August 26th, before the convention was held or the services were performed. We assume the Governor and Director of Finance approved that journey and expenditure of costs of the trip for a legitimate purpose and with full understanding that the object of attending the convention was in line with the claimant's official duties as chief of the Division of Narcotic Enforcement, and that the authorized services therefore constituted state business. That does not preclude the controller, in the exercise of his duties, when the claim is actually filed for allowance, from examining the facts to ascertain whether the business of the convention in fact included duties incident to those of Mr. Madden's regular employment, or whether he did actually attend the convention. If for any valid reason the controller finds that the services were not performed, or that they do not constitute state business, or that the expenses were not incurred, it is his duty to reject the claim.

It is the duty of the state controller to audit claims presented against the state and to draw his warrant in payment of such claims only as are authorized by law. (*Sawyer v. Colgan,* 102 Cal. 283 [36 Pac. 580, 834]; § 433, subds. 10, 17 and 19, Pol. Code.) Section 433 provides in part:

"It is the duty of the controller:

"10. To audit all claims against the state *in cases where there are sufficient provisions of law for the payment thereof;*

"17. To draw warrants on the treasurer for the payment of *moneys directed by law* to be paid out of treasury; *but no warrant must be drawn unless authorized by law*, and upon an unexhausted specific appropriation provided by law to meet the same. . . ." (Italics ours.)

In rebutting a similar contention that the controller was bound by the approval of a claim by the Engineering Department, and that he was powerless to challenge its validity on that account, the Supreme Court said in *California Highway Com.* v. *Riley*, 192 Cal. 97 [218 Pac. 579], at page 112, that:

"The demand here under consideration having been so made, allowed, and audited, it is said to be the plain mandatory duty of the respondent not to question the same but to draw his warrant therefor. The various provisions of section 433 of the Political Code seem to indicate that the controller's duties and responsibilities are not so narrowly restricted, but it is not necessary to here determine their precise nature and extent. The writ of mandate is, in a measure at least, a discretionary writ, and it will not be granted where its enforcement would work an injustice or accomplish a legal wrong. (Citing authorities.) It will not issue to compel an auditor to draw his warrant for an illegal claim even though it has been audited and allowed by the board which is charged with that duty and responsibility. (*Walton* v. *McPhetridge*, 120 Cal. 440 [52 Pac. 731].)

We conclude that it was not only the privilege, but it was the duty of the state controller, to audit the claim which is involved in the present proceeding and to determine whether it was valid or invalid, and to draw or withdraw his warrant therefor, dependent upon his conclusion in that regard. His determination concerning the validity of such claims is subject to review of the courts in proper proceedings. (*California Highway Com.* v. *Riley, supra; Irwin* v. *County of Yuba*, 119 Cal. 686 [52 Pac. 35]; *Gibson* v. *County of Sacramento*, 37 Cal. App. 523 [174 Pac. 935]; *Shanks* v. *Commonwealth*, 219 Ky. 212 [292 S. W. 837].)

This brings us to the problem of what constitutes state business, and whether the allegations of the petition sufficiently show that the expenses, for which the claim was presented, were incurred by Mr. Madden incident to his performance of state business.

We shall not attempt to give a comprehensive definition of

state business. That might be an arduous undertaking. It would be far easier to determine, by way of illustration, what activities are deemed not to constitute state business.

It is true that fees, expenses and compensation of public officers must be authorized by statute and that the provisions therefor should be strictly construed. (*Sarter* v. *Siskiyou County,* 42 Cal. App. 530, 534 [183 Pac. 852].) It must be conceded the only traveling expenses to which officers and employees of the state are entitled are those which are necessarily incurred in the performance of, or incidental to, the service for which such officers and employees are regularly employed. The expenses of the chief of the Division of Narcotic Enforcement, in attending a convention of civil engineers, would clearly not be authorized, for the reason that civil engineering is not in his line of employment. Such authorization might be deemed to be illegal and void. It has been frequently held that attendance of officers or employees at conventions for the mere purpose of acquiring general information, instruction or knowledge applicable to the nature of services demanded in their particular department, or the mere fact that the delegates attending the conventions propose to discuss ways and means of attaining greater efficiency in the duties of their respective similar offices, does not constitute state business, unless the statute specifically so declares. Attendance at conventions, under such circumstances, has been held to be merely educational in its nature. Some of the cases declare that public officers are expected to secure their education, qualifying them for efficient service in their particular employment, at their own expense, and not to expect the public to pay for that training. The courts have repeatedly held that claims for services similar to those which have been previously mentioned are illegal and void. (*Irwin* v. *County of Yuba, supra; Jefferson County* v. *Jefferson County Fiscal Court,* 269 Ky. 768 [108 S. W. (2d) 810]; *Smith* v. *Holovtchiner,* 101 Neb. 248 [162 N. W. 630, L. R. A. 1917E, 331]; *Gibson* v. *County of Sacramento, supra.*) In the case last cited it is said at page 525 of the opinion, that:

"It cannot be doubted that 'one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority of law.' (*Irwin* v. *County of Yuba,* 119 Cal. 686 [52 Pac. 35]; *Woods* v. *Potter,* 8 Cal. App. 41, 45 [95 Pac. 1125].) Nor may the payment of such a claim be

allowed upon the theory that the services performed for which compensation is claimed were beneficial. There must be some statutory or constitutional authority for compensation for services rendered to a county, otherwise it cannot legally be paid, however beneficial the services performed may be to the county or the public generally.''

In opposition to the payment of claims for traveling expenses incurred by officers in attending conventions for the mere purpose of acquiring general knowledge or improving their education, it is said in the case of *Jefferson County* v. *Jefferson County Fiscal Court, supra*:

''But the statute does not expressly or by necessary implication authorize the fiscal court to appropriate county funds to pay the expenses of its officers for educational purposes. The presumption is that such officers were qualified for the performance of their duties before they were employed, and if they desire further education or information relating to their work, they must acquire such at their own expense. It would be no more reasonable for the county to pay such expenses of the officers here in question than it would be to pay tuition and other expenses incurred in sending any other county officials to school in order that they may better qualify themselves for the discharge of their official duties. (*Shanks* v. *Comm.*, 219 Ky. 212 [292 S. W. 837].)''

To the same effect are numerous cases from other jurisdictions, many of which have been cited by the attorney general in opposition to this petition.

On the contrary, the cases of *Tousley* v. *Leach*, 180 Minn. 293 [230 N. W. 788], and *Lindquist* v. *Abbett*, 196 Minn. 233 [265 N. W. 54], upon which the petitioner relies, do hold that officers or employees may recover traveling expenses incurred in attending conventions of similar officers for the purpose of securing general knowledge and information which would enable them to perform their particular duties more efficiently.

While it is difficult to draw the line between legitimate services which may be deemed to constitute state business, and those which are not included therein, we are satisfied that the purpose for which an officer attends a convention must have some direct connection with the fulfillment of his own public duties in the department in which he is employed, to entitle him to recover traveling expenses incident thereto. We are not in accord with the two previously cited Minnesota cases

in that regard. In our judgment they too greatly extend the so-called discretionary right to allow such claims, and they encourage the reckless approval of illegal demands for expenses incurred in so-called "junketing" expeditions.

In the present case, however, the petition clearly states that Mr. Madden incurred necessary traveling expenses in attending the convention of law enforcement officers at Reno, not only for the purpose of securing expert information and knowledge of modern methods of apprehending and convicting violators of the narcotic laws, so as to administer the duties of his own office more efficiently, but also "to secure the cooperation of other law enforcement officials" of the several states of this Union and of the federal authorities, to enable him better to enforce the narcotic laws of the State of California. The securing of cooperation, reciprocity and aid of the peace officers of other states, who constantly deal with offenders against the narcotic traffic, would clearly enable the claimant to obtain better enforcement of the narcotic laws in California. Certainly this renders the attendance of that convention, by the chief of the Division of Narcotic Enforcement, state business. That aid would help to more efficiently enforce the law in California, and to fulfill the very official duties for which the claimant is employed. There is a clear distinction between the cases previously cited which involve the payment of claims for traveling expenses incurred in attending conventions for purely educational purposes, and the present proceeding. We are therefore of the opinion the petition alleges facts sufficient to justify the issuance of the writ as prayed for.

The demurrer is overruled. The cause may be placed on the calendar for hearing on its merits.

Adams, P. J., concurred.