

# The Attorney General of Texas

November 10, 1977

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

The Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas 78774

Opinion No. H-1089

Re: Use of aircraft
owned or leased by
State agencies.

Dear Mr. Bullock:

You have asked several questions about provisions of article V of the General Appropriations Act concerning the use of State-owned or leased aircraft. Your first four questions inquire about flight logs and the information to be contained in them. However, since the current Appropriations Act does not refer to the maintenance of airplane flight logs, we will not address those questions. There are various federal record keeping requirements which apply to aircraft, but your request is not directed at them. See, e.g., 14 C.F.R. §§ 43.9, 43.11, 61.51 (1977).

Section 53 of the current Appropriations Act (Acts 1977, 65th Leg., art. V, sec. 53) provides in part:

> Sec. 53. ANNUAL REPORTS AND INVEN-
> TORIES. None of the moneys appropriated
> in this Act in Articles I, II, III, and
> to . . . [various agencies receiving funds
> in Article IV] may be expended after a
> period of one hundred (100) days follow-
> ing the close of the fiscal year, unless
> there has been filed with the Governor,
> the State Auditor, and the Legislative
> Budget Board an annual report as of
> August 31 of the preceding fiscal year
> by the executive head of each depart-
> ment or agency specified in this Act,
> showing the use of appropriated funds.
> The annual report shall include the
> following:
>
> . . . .

> e.  A summary of the use made of state
> owned aircraft or aircraft operated under
> long term lease or rental.  The summary
> shall include aircraft description, date
> purchased or leased, cost, hours flown,
> number of flights and destination, number
> and names of passengers and the official
> business purpose of each flight.

Acts 1977, 65th Leg., art. V., § 53.

You inquire whether persons other than the agency's employees may be transported on its airplane while it is in use on official state business, and if so, what information must be recorded concerning such persons.  You inform us that, when seating space is available, persons such as employees of other State agencies, federal officials, officials of other states, journalists, spouses of State officials, and other private persons have been transported on State aircraft.

The flight must be for official business and there must be a business reason for the presence on it of any of the people you name.  See Attorney General Opinions H-602 (1975); H-184 (1973).  Travel regulations in other states permit non-employees to ride in state vehicles if they are traveling on official business.  Minnesota Transportation Division Rules and Regulations, rule I B; Nevada State Administrative Manual, § 0635 at 22.

What constitutes official business will depend on the powers and duties of the agency under consideration, and whether an individual's presence on a State flight furthers its business purpose will depend upon all the facts and circumstances of each case.  Since you do not inquire about any particular trip, we cannot make the necessary individual determination.  Nor can we give an exhaustive definition of official business for purposes of your question, since that would require a survey of the powers and duties of all state officials and agencies.  We can, however, give you some examples from prior opinions of the official business purpose of travel by various persons, including private citizens, and thus point out considerations relevant to the determination of particular cases.

Attorney General Opinion O-4167 (1941) noted that travel expenses of University employees could be paid if incurred for State business, and that

> "State business" signifies the accomplish-
> ment of a governmental function; it requires

> that the means and method adopted be reason-
> ably necessary; it implies that the particu-
> lar governmental function involved be one
> directly entrusted to the institution or
> department assuming its accomplishment.

Id. at 7.  Applying this standard, it approved payment of travel expenses for public relations purposes, for the purpose of meeting with journalists, contacting foundation officials and conferring with potential donors.

Other examples of State business justifying the payment of travel expenses include attendance at a Commission meeting by a Commission member, Attorney General Opinion H-193 (1974); attendance at a training school by a State employee at the direction of his agency, Attorney General Opinions WW-83 (1957); S-209 (1956); attendance at a convention by a board member at the direction of his board, Attorney General Opinion C-761 (1966); and attendance by a Railroad Commission representative at a dedication ceremony sponsored by the Historical Survey Committee, Attorney General Opinion M-121 (1967).  See also Madden v. Riley, 128 P.2d 602 (Cal. Ct. App. 1942); Louisville and Jefferson County Board of Health v. Steinfeld, 215 S.W.2d 1011 (Ky. Ct. App. 1948). In Attorney General Opinion H-275 (1974) we concluded that employees of the Water Quality Board who spoke to private citizen groups at the Board's request could be reimbursed for travel expenses incurred during these speaking engagements.  We noted that the statute required the Board to encourage private groups to become involved in water quality control, and that providing employees for speaking engagements helped carry out this duty. Thus, the employees were traveling on State business and could be reimbursed in accordance with travel regulations set out in the Appropriations Act.

The Attorneys General of two other states have articulated standards for the use of state-owned aircraft by state officials. The Attorney General of Pennsylvania concluded that the Governor could use state aircraft without reimbursing the state where the predominent purpose of the flight was official business and personal business was secondary.  Opinion No. 75-20-B.  The Attorney General of Oklahoma determined that the Governor had wide latitude to use state aircraft for official purposes and he noted that transporting a Supreme Court Justice to a hearing on an urgent matter was undoubtedly official business.  Opinion No. 76-201.

The following provision of the Appropriations Act is relevant to your inquiry about transportation on an agency aircraft of persons employed by other agencies:

It is the intent of the Legislature
that state-owned aircraft be utilized
by all agencies of the state.  To de-
termine the extent to which this intent
is being met, agencies operating state-
owned aircraft shall file an annual
report with the Legislative Budget Office
detailing utilization by other agencies
and the methods used to increase the
utilization.

Acts 1977, 65th Leg., art. V, § 18a (4).  The inclusion on a
flight of an employee of another agency carries out the legisla-
tive intent expressed in this provision.  The employee must of
course be traveling on official business.  See also Attorney
General Opinion O-2258 (1940) (Liquor Control Board may pay
travel expenses of Assistant Attorneys General assigned to it).

This office has held that the State could pay the travel
expenses of unpaid citizen members of a civil defense committee
established under a federal-state contract which permitted the
payment of such expenses from federal funds.  Attorney General
Opinion C-440 (1965).  See also Attorney General Opinion M-999
(1971) (Department of Corrections plane used to return prisoners
from other states to serve time in Texas).

We have discovered no prior opinions concerning the trans-
portation of federal officials or the officials of other states
at State expense.  However, authority for provision of such
transportation might be found in a contract with the federal
government, a statute providing for intergovernmental cooperation,
or a state benefit which would be realized by the transportation.
See, e.g., V.T.C.S. arts. 695c, § 4 (4), (12); 4413c-1; 4413
(32b); 4419a.  Provision of transportation under such authority
would have an official purpose and not constitute the grant of
a benefit to a private citizen.  Cf. Attorney General Opinion
M-263 (1968) (State agency may pay salary of employee assigned
to federal agency under grant providing reimbursement).

Nor do any prior opinions address the transportation of
journalists at State expense.  We have, however, said that the
Legislature could provide rent free office space in the Capitol
to news organizations.  Attorney General Opinions H-920 (1977);
H-184 (1973).  We determined that the provision of free space
to the media for proper media purposes would not violate arti-
cle 3, section 51 of the Constitution but would serve the public
purpose of keeping the people informed about the transaction of
public business.  In our opinion, an agency properly engaged

in disseminating information to the public, see Attorney General Opinions H-275 (1974); O-4167 (1941), might under appropriate circumstances include journalists on a flight on official business.

We find no opinions regarding the provision of free transportation to spouses of State officials, but we believe that the federal tax treatment of travel expenses incurred by the spouses of federal officials provides some helpful analogies. Such expenses are not deductible unless the spouse's presence serves a business purpose. Weatherford v. United States, 418 F.2d 895 (9th Cir. 1969). See Wilkins v. United States, 348 F. Supp. 1282 (D. Neb. 1972), aff'd without opinion, 486 F.2d 1407 (8th Cir. 1973) (travel expenses incurred by wife of Foreign Service inspector on inspection trip were deductible business expenses), and S. Rep. No. 768, 93d Cong., 2d Sess. 157 (1974) (certain trips on government aircraft by President's wife were for official purpose, such as standing in for the President). See also United States v. Disney, 413 F.2d 783 (9th Cir. 1969); Warwick v. United States, 236 F. Supp. 761 (E.D. Va. 1964).

Under circumstances similar to those that establish a bona fide business purpose under federal tax law, we believe the spouse of a public official engages in official business so that the provision of free transportation will not constitute the grant of a benefit to a private person in violation of article 3, section 51. See also Informal opinion from office of Attorney General of Utah to Director, Department of Finance, September 12, 1977. The nature and duties of the office, the traditional role, if any, of the officeholder's spouse, the purpose of a particular trip and the spouse's connection with that purpose are factors relevant to the determination that there is an official purpose in a particular case.

When any person is transported on its airplane, section 53e requires that his name and the official business purpose of the trip be reported. The section does not require other identifying information, such as title, but the reporting agency may wish to include such information to help explain the official business purpose of the flight.

You state that an agency may use an airplane belonging to another agency without entering into an interagency contract, and inquire which agency should include information about those flights in its annual report. Since the purpose of the annual reports required by section 53 is to show the use of appropriated funds, we believe the agency whose appropriation pays for the

use of the plane should include that use on its annual report. In most cases, the agency that owns the aircraft would be the proper agency to report use of the plane while it is being used by another agency.

You finally inquire whether any State agency has authority to promulgate guidelines concerning the use and operation of State-owned and leased aircraft. Each agency head is responsible for the proper custody and care of the State property possessed by his agency. V.T.C.S. art. 6252-6, § 5. The agency head has considerable discretion as to the use of aircraft owned or leased by his agency, subject to limitations in statute and the appropriations act. See, e.g., Attorney General Opinions S-142 (1954); O-4167 (1941). See also V.T.C.S. arts. 6252-15; 6252-19a, § 1.

S U M M A R Y

Article V, section 53e requires State agencies which rent or lease aircraft to include in their annual report to the Legislative Budget Board certain information regarding use of the aircraft, including names of passengers and official business purpose of each flight. Persons such as employees of another agency, officials of another state or the federal government, journalists, spouses of State officials and other private persons may be transported on aircraft operated by a State agency when their presence on the flight furthers an official business purpose. Where one agency uses the airplane of another, the agency whose appropriation pays for use of the airplane should include that use on its annual report. The agency head has considerable discretion with respect to use of aircraft owned or leased by his agency.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst