[Civ. No. 8246. Second Appellate District, Division Two.—June 20, 1934.]

LOS ANGELES WAREHOUSE COMPANY, Respondent, v. COUNTY OF LOS ANGELES, Appellant.

Everett W. Mattoon, County Counsel, and Robert A. Cushman, Deputy County Counsel, for Appellant.

Sherman Anderson for Respondent.

ARCHBALD, J., *pro tem.*—Appeal by defendant from a judgment on an open book account for storage alleged to be due, owing and unpaid on certain automobiles stored at its request.

It was stipulated that the drivers of the twenty cars involved were arrested at the various times the machines were seized, upon charges which included in each instance the transportation of intoxicating liquor in violation of the Wright Act, and that the cars were delivered to plaintiff by the arresting officers for storage at an agreed price per month. The evidence shows that the cars were ultimately sold by plaintiff for the unpaid storage charges and that the amounts received less expenses of sale were deducted by it from the total charge; that a claim for the balance was presented to the board of supervisors of Los Angeles County, which allowed it for the sum of $542.47 but rejected it for the balance, suit therefor being brought by plaintiff; that "no agreement was made as to how long the county was to pay the charge for storage of the cars" nor "as to how long the cars should stay in there"; only "that my [Mr. Contreras, chief enforcement officer] signature be on all releases" and "that no one could be released without my signature". Nor can we find evidence of any express

contract to pay storage after the termination of criminal proceedings instituted against the drivers of such cars. The registered and legal owners were different on all but a few of such machines.

Many cars other than those here involved were stored by the officers under the same arrangement, but such cars were either released to the driver after acquittal or dismissal of the pending charges on an order signed by Contreras, the driver paying storage charges, or were sold by the county "where the criminal charge resulted in a conviction of transportation or a plea of guilty". On some occasions, where the driver pleaded guilty to one count, the transportation charge was dismissed and a release order given the driver, who "would present that order to the [plaintiff], pay the charges and get his car back". It also appears that as to fourteen of the cars here involved the amount in which plaintiff's claim was allowed covered the entire time prosecutions were pending against either the drivers or the cars. As to the remaining six, prosecutions were commenced, but the evidence does not show what disposition was made of the cases, if any. All of the seized automobiles were to be used as evidence, if necessary, in prosecutions against the persons possessing them at the time of seizure. Apparently no notice of the termination of any of the charges connected with the twenty cars mentioned was given plaintiff by anyone, and the sales were made at the suggestion of defendant's counsel.

It is admitted by appellant that subdivisions 2 and 3 of section 4307 of the Political Code afford authority for making such an expense a charge against the county where it is in aid of the detection or prosecution of crime, the material part of such section reading as follows: "The following are county charges: . . . 2. . . . and all other expenses necessarily incurred by him [the district attorney] in the detection of crime and prosecution of criminal cases. . . . 3. The expenses necessarily incurred . . . for other services in relation to criminal proceedings for which no compensation is prescribed by law." Appellant urges, however, that inasmuch as the storage charges for which the judgment was rendered accrued subsequent to the termination of criminal proceedings, no representative of the county had any authority to bind it to pay them.

■. That the enforcement of the criminal law is a governmental function the expense of which the state imposes on the county, and that the right to make such expense a county charge must be found in legislative sanction, hardly needs the citation of authority. We think it is equally fundamental that the measure of the power to bind the county must be found in the legislative authorization. ■ In other words, in the present case the district attorney's authority did not extend beyond expenses *necessarily incurred* in the detection and prosecution of crime. When such prosecution ended, in our opinion his authority to bind the county ended, and respondent was charged with knowledge of the limits of his authority. (*Foxen* v. *City of Santa Barbara*, 166 Cal. 77, 82 [134 Pac. 1142].) ■ Being in excess of the power of such officer to make a contract binding the county to pay for the storage of automobiles except where they were to be used in the prosecution of crime, no contract to make such payment other than when stored for such purpose could be implied. (*Reams* v. *Cooley*, 171 Cal. 150, 153 [152 Pac. 293, Ann. Cas. 1917A, 1260].) "The law never implies an agreement against its own restrictions and prohibitions." (*Zottman* v. *San Francisco*, 20 Cal. 96, 107 [81 Am. Dec. 96].) Nor can the doctrine of estoppel be invoked in view of the fact that appellant was exercising a governmental function and the act, if it is an act, attempted to be so enforced is in excess of the power of the corporation. (*Sutro* v. *Pettit*, 74 Cal. 332, 336 [16 Pac. 7, 5 Am. St. Rep. 442]; *Warren Bros. Co.* v. *Boyle*, 42 Cal. App. 246, 260 [183 Pac. 706]; *Foxen* v. *City of Santa Barbara, supra*, p. 82.) Cases cited in which the doctrine of estoppel was applied seem to be those where authority to make the contract existed and the municipality benefited by it but attempted to defeat being compelled to pay by reason of some technical irregularity not amounting to a lack of power.

Of the fourteen cars sold, five brought $1 each, one $2, one $2.50, one $3, one $4.50, one $8, one $15, one $45, one $38.50 and one $75, and they were stored from approximately fifteen to fifty-seven months, most of the least valuable cars, naturally, for the longest periods. ■ Respondent being charged with knowledge of the limitation on the power of the district attorney to make such storage a county

charge, and of the fact that a contract could not be implied by law where no authority to make an express contract existed, was bound to inquire as to the necessity of continued storage after the accrued bill had neared the value of the car stored, or carry it further at its own risk.

■ As to the remaining six cars, the evidence shows the storage charges amounted to $541 and that they were sold for $38.50, leaving a balance due of $502.50. Inasmuch as we must assume from the evidence that proceedings were pending against the drivers of such cars at the time they were placed in storage, and as it does not show any disposition of such cases, we cannot say that such charge was in excess of the power of appellant to incur. ■ The answer sets up the defense of *ultra vires*. In that case, as did the Supreme Court in *Brown* v. *Board of Education,* 103 Cal. 531, at page 534 [37 Pac. 503], we say that "when a corporation seeks to avoid its own contract on the ground of its want of power to contract, it must make good its defense of *ultra vires* by plea and proof". Not having done so by proof, it would seem that respondent is entitled to judgment for the sum of $502.50.

We therefore amend the findings made by the lower court by striking out paragraphs V, VI and VIII and inserting in lieu thereof the following:

## V.

That the storage charged on fourteen of said cars was incurred after criminal proceedings against the drivers thereof were terminated, and no contract existed between plaintiff and defendant, whereby defendant was obligated to pay such charges, and any such contract would have exceeded the power of said defendant and would have been void.

## VI.

That as to six of the cars so placed in storage it does not appear that the contract to pay storage thereon was in excess of the power of said corporation, and the amount of storage due thereon is the sum of $502.50.

## VIII.

That defendant became and is now indebted to the plaintiff in the sum of $502.50, with interest from January 27, 1930, at the rate of seven per cent per annum, no part of which has been paid.

Judgment reversed, with directions to the trial court to enter judgment in favor of plaintiff in accordance herewith.

Stephens, P. J., and Desmond, J., concurred.