TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  | : |  |
|---|---|---|
| OPINION | : | No. 85-804 |
| of | : | MARCH 14, 1986 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| JACK R. WINKLER | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE J. E. SMITH, COMMISSIONER OF THE CALIFORNIA HIGHWAY PATROL, has requested an opinion on the following question:

When a member of the California Highway Patrol seizes a vehicle or other item without a search warrant and arranges to have it transported and stored for safekeeping to be used as evidence in the investigation and possible prosecution of a crime, is the state or the county where the crime occurred, or both, responsible for the towing and storage charges?

CONCLUSION

When a member of the California Highway Patrol seizes a vehicle or other item without a search warrant and arranges to have it transported and stored for safekeeping to be used as evidence in the investigation and possible prosecution of a crime, the county where the crime occurred is responsible for the towing and storage charges from the time the criminal proceeding commences until it terminates and the

1

state is responsible for such charges at other times unless the district attorney or sheriff has authorized such expenses as charges against the county.

ANALYSIS

On May 3, 1985, this office issued Opinion No. 84-106 (68 Ops.Cal.Atty.Gen. 94) to the Commissioner of the California Highway Patrol. That opinion concluded:

(1) The California Highway Patrol is not liable for the towing and storage charges when a California Highway Patrol officer causes a private garageman to tow and store an unattended vehicle unless there has been a subsequent determination that there was no probable cause to remove the vehicle from the highway. (2) When a vehicle is seized by a California Highway Patrol officer pursuant to a search warrant, the California Highway Patrol is responsible for its custody including any towing and storage charges and must contract therefor if storage in a public facility is not available. (3) A court may require the California Highway Patrol to pay towing and storage charges when a vehicle is seized by a California Highway Patrol officer for alleged altered identification numbers only if the fact of alteration is not proven."

Thereafter the Commissioner indicated that the California Highway Patrol (CHP) makes a substantial number of warrantless seizures of vehicles and requested an opinion on the following questions:

1.  Is the state or is the county responsible for towing and storage charges incurred as a result of warrantless seizures of evidence by the CHP to be used in criminal investigations or prosecutions or both, irrespective of whether criminal charges are filed by the District Attorney?

2.  If, in your assessment of question one, there is a dual responsibility for warrantless seizure charges, at what point does the responsibility cease on the part of the state and begin on the part of the county, or for what percentage must each be responsible?

This opinion responds to these questions and will supplement our May 3, 1985 opinion on this subject.

Penal Code section 830.2(a) provides that members of the CHP are peace officers whose authority extends to any place in the state and the primary duty of such officers is the enforcement of the provisions of the Vehicle Code and other laws relating to the use or operation of vehicles upon the highways.

2

The factual predicate for the question presented is that a member of the CHP has made a warrantless seizure of a vehicle or other item as evidence in an investigation of a crime to be used in the prosecution of such crime. We are not concerned in this opinion with the basis for the seizure, whether by consent of the owner, as incident to a lawful arrest or other justification. Nor are we concerned herein whether the seizure was lawful. We deal only with the fact that the officer seized the vehicle or other item because it was evidence of the commission of a crime. Having made the seizure, what is the officer's responsibility and that of the state and county for the safekeeping of the items seized?

*Gershenhorn* v. *Superior Court* (1964) 227 Cal.App.2d 361, provides the basic rationale for such a seizure. In that case at page 366 the court stated:

"We are not now concerned with a private seizure, by a private individual, for some purpose of his own. We deal with property seized by a public officer, acting under the color of his status as a law enforcement officer, and seized solely on the theory that it constitutes a part of the evidence on which judicial action against its owner or possessor will be taken. We regard property so taken and so held as being as much held on behalf of the court in which the contemplated prosecution will be instituted as is property taken and held under a warrant. The seizing officer claims no right in or to the property, or in or to its possession, save and except as the court may find use for it. He must respond, as does any custodian, to the orders of the court for which he acted."

Thus property seized by a peace officer without a warrant is held *in custodia legis* in the same manner as property seized pursuant to a search warrant. (See also *People* v. *Superior Court* (1972) 28 Cal.App.3d 600, 608-610, in which the court reiterates the passage quoted above from the *Gershenhorn* case with approval.)

Government Code section 29601 provides in part:

"The following expenses of the district attorney and the sheriff are county charges:

"(a) Traveling and other personal expenses incurred in criminal cases arising in the county and in civil actions and proceedings in which the county is interested.

"(b) All other expenses necessarily incurred by either of them:

3

85-804

"(1) In the detection of crime.  Except as to violations of Section 23102 of the Vehicle Code, the provisions of this section do not apply to the detection of those crimes declared to be misdemeanors by the Vehicle Code.

"(2) In the prosecution of criminal cases, . . ."

Government Code section 29602 provides:

"[A] The expenses necessarily incurred in the support of persons charged with or convicted of crime and committed to the county jail [B] and the maintenance therein and in other county adult detention facilities of a program of rehabilitative services in the fields of training, employment, recreation, and prerelease activities, [C] and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges."

Both sections 29601 and 29602 were included in the Government Code by chapter 424, Statutes 1947, and were of derived from Political Code section 4307.  The part labeled [B] in section 29602 was added by chapter 2025, Statutes of 1957.

Government Code section 29602 (without the part in [B] above) was taken verbatim from subdivision 3 of section 4307 of the Political Code.  That subdivision 3 was analyzed at some length in *Gibson* v. *County of Sacramento* (1918) 37 Cal.App. 523, 525-528.  On pages 527-528 the court said:

"Our conclusion is that there is no natural or logical connection between the two sentences in said subdivision--that is to say, that the language, 'and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law,' has no reference or application to the language in the same subdivision immediately preceding it or to any of the preceding subdivisions, but that said language was retained as a part of the law to operate as an independent, substantive provision thereof, to cover or meet contingencies which, it was conceived by the legislature, from common experience, might arise, and require the incurring of expense in the prosecution of criminal cases and which human prescience is unable to foresee, so that specific provision for the expenses arising may be made.  And, that the provision, in its present form and connection, was designed, *ex industria*, to meet just such cases as the one before us and its language [is] broad enough to include services of the

4

character of those for which the appellants claim the right to be compensated by the county, we are in no doubt . . . ."

The court held that this statute authorized the payment from county funds of an attorney appointed by the superior court to prosecute an accusation presented by the grand jury charging the district attorney with misconduct in office.

In *L.A. Warehouse Co.* v. *County of Los Angeles* (1934) 139 Cal.App. 368 law enforcement officers (agency not designated in the court's opinion) seized 20 cars for evidence following arrest of the drivers for unlawful transportation of liquor. The officers had the cars stored in plaintiff's warehouse. When the storage fees were not paid, plaintiff sued and won a judgment against the county for the same. On appeal the court reversed as to charges which had accrued after judgment in the criminal case and affirmed the remainder of the judgment. The court observed (at pp. 370-371):

"It also appears that as to fourteen of the cars here involved the amount in which plaintiff's claim was allowed covered the entire time prosecutions were pending against either the drivers or the cars. As to the remaining six, prosecutions were commenced, but the evidence does not show what disposition was made of the cases, if any. All of the seized automobiles were to be used as evidence, if necessary, in prosecutions against the persons possessing them at the time of seizure. Apparently no notice of the termination of any of the charges connected with the twenty cars mentioned was given plaintiff by anyone, and the sales were made at the suggestion of defendant's counsel.

"It is admitted by appellant that subdivisions 2 and 3 of section 4307 of the Political Code afford authority for making such an expense a charge against the county where it is in aid of the detection or prosecution of crime, the material part of such section reading as follows: 'The following are county charges: . . . 2. . . . and all other expenses necessarily incurred by him [the district attorney] in the detection of crime and prosecution of criminal cases. . . . 3. The expenses necessarily incurred . . . for other services in relation to criminal proceedings for which no compensation is prescribed by law.' Appellant urges, however, that inasmuch as the storage charges for which the judgment was rendered accrued subsequent to the termination of criminal proceedings, no representative of the county had any authority to bind it to pay them.

"That the enforcement of the criminal law is a governmental function the expense of which the state imposes on the county, and that the

5

right to make such expense a county charge must be found in legislative sanction, hardly needs the citation of authority.  We think it is equally fundamental that the measure of the power to bind the county must be found in the legislative authorization.

"In other words, in the present case the district attorney's authority did not extend beyond expenses *necessarily incurred* in the detection and prosecution of crime.  When such prosecution ended, in our opinion his authority to bind the county ended, and respondent was charged with knowledge of the limits of his authority.  [Citation.]  Being in excess of the power of such officer to make a contract binding the county to pay for the storage of automobiles except where they were to be used in the prosecution of crime, no contract to make such payment other than when stored for such purpose could be implied.  [Citation.]"

With respect to 14 of the cars the court observed (at pp. 371-372):

"Respondent being charged with knowledge of the limitation on the power of the district attorney to make such storage a county charge, and of the fact that a contract could not be implied by law where no authority to make an express contract existed, was bound to inquire as to the necessity of continued storage after the accrued bill had neared the value of the car stored, or carry it further at its own risk."

With respect to the other six cars the court said (at p. 372):

"Inasmuch as we must assume from the evidence that proceedings were pending against the drivers of such cars at the time they were placed in storage, and as it does not show any disposition of such cases, we cannot say that such charge was in excess of the power of appellant to incur.  The answer sets up the defense of *ultra vires*.  In that case, as did the Supreme Court in *Brown* v. *Board of Education*, 103 Cal. 531, at page 534 [37 Pac. 503], we say that 'when a corporation seeks to avoid its own contract on the ground of its want of power to contract, it must make good its defense of *ultra vires* by plea and proof'.  Not having done so by proof, it would seem that respondent is entitled to judgment for the sum of $502.50."

In *Hart Bros. Co.* v. *County of Los Angeles* (1939) 31 Cal.App.2d Supp. 766, a judge of the municipal court ordered his bailiff to arrange meals, lodging and transportation for the trial jury sitting in a criminal case pending in his court.  Plaintiff provided such accommodations for the jurors but the board of supervisors denied its

claim for payment.  On appeal, judgment against the county was affirmed.  The court quoted subdivision 3 of the Political Code section 4307 (quoted above) and stated (at pp. 769-770):

> "If we assume that this provision is by implication limited to criminal proceedings carried on in courts which are supported by the county, the Los Angeles Municipal Court is, in spite of its name, such a court, for all of its expenses are paid from county funds, . . .  To come within the above quoted provision of section 4307 of the Political Code, services need not be performed by a county officer or any particular person. . . .  We see no reason to doubt that it is adequate to cover the services rendered by plaintiff here, if the municipal court had power to direct their rendition."

The court then held that a court had inherent power, regardless of statutory authority, to provide the necessary accommodations for a trial jury.

In *Fursdon* v. *County of Los Angeles* (1950) 100 Cal.App.2d Supp. 845, a judge of the municipal court holding a preliminary hearing on a felony charge ordered a daily transcript from the plaintiff to be paid for from the County Treasury.  The court cited *Irwin* v. *County of Yuba* (1898) 119 Cal. 686, 690 for the rule that one who demands payment of a claim against the county must show some statute authorizing it, or that it arises from some contract, express or implied, which itself finds authority of law. Plaintiffs relied on Government Code section 29602 as such authority.  The court stated (at p. 847):

> "This provision does not throw open the door to the unsolicited performance of any sort of services by anybody and sanction payment of their cost by the county whenever they are 'in relation to criminal proceedings.'  One condition to such payment is that the expense of such services be 'necessarily incurred.'  This means that the services have been ordered by some officer or board then having authority to do so. (*Hart Bros. Co.* v. *County of Los Angeles* (1938), 31 Cal.App.2d Supp. 766, 770; *Los Angeles Warehouse Co.* v. *County of Los Angeles* (1934), 139 Cal.App. 368, 371.)  Plaintiffs argue that a different construction was given this statutory provision in *Gibson* v. *County of Sacramento* (1918), 37 Cal.App. 523, but we do not so regard that case.  Some of the language of the opinion might possibly have such a tendency, if considered without regard to the facts of the case; but there an express statutory authority to order the services appeared, and the only question under consideration was whether there was a liability on the county to pay for them.  This, the court

7

concluded, was created by the provision in question, then in the Political Code.

The court then held that since the municipal court had no statutory or inherent power to order the daily transcript, the judgment ordering payment therefore was reversed.

In *Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 324 the Supreme Court held that both specified statutes and the constitutional right to effective counsel authorized a trial court to appoint experts and provide defense services and that Government Code section 29602 authorized the payment of such expenses from county funds without budget authorization or approval of claims for payment for such services by the board of supervisors.

In 2 Ops.Cal.Atty.Gen. 69 (1943) the CHP sought an opinion whether fees charged by persons who examined drunk drivers were a proper charge against the state or the county or whether the entity which employed the officer making the arrest should pay the fee. The opinion pointed out that the statute making expenses incurred by the district attorney and sheriff in the detection of crime and the prosecution of criminal cases proper county charges was amended in 1935 to except Vehicle Code misdemeanors and again in 1937 to except drunk driving offenses from the exception. We said that "the legislature intended that expenses incurred for sobriety tests could be charged to the county." We also said that subdivision 3 of the Political Code section 4307 "is broad enough to cover the situation in question" with respect to drunk driving arrests. We concluded that the fees charged for examining drunk drivers were a proper charge against the county, not the state, and "it matters not whether the arresting officer be a state or county official." Significantly we added:

> "This letter is not to be construed, however, to indicate or mean that the members of the Patrol have any authority to incur such costs or to employ physicians at county expense. That is the province of county officials, principally the district attorney or the sheriff, and their right to incur such expense is found in the code sections above referred to."

The question presented raises the issue whether the state or county is financially responsible for the storage charges on vehicles seized by the CHP as evidence of a crime. In *L.A. Warehouse Co.* v. *County of Los Angeles*, *supra*, 139 Cal.App. at 371, the court stated:

> "That the enforcement of the criminal law is a government function the expense of which the state imposes on the county, and that the right to

8

make such expense a county charge must be found in legislative sanction, hardly needs the citation of authority."

While the initial statement is generally true it does have its exceptions. The organization of the CHP funded by the state provides one example of criminal law enforcement the expense of which the state has not imposed on the county. The authorization for city police forces funded by the city is another example. The courts have long applied the rule of *Irwin* v. *County of Yuba, supra*, 119 Cal. 686 that one who demands payment of a claim against the county must show some statute authorizing it, or that it arises from some contract, expressed or implied, which itself finds authority of law. We therefore must look to the statute books for authorization to make storage charges for vehicles seized by the CHP as evidence of crime a charge against the public treasury.

We look first to the statutes making enforcement of the law a charge against the county. Government Code section 29601 speaks of "other expenses necessarily incurred by either of them" in the detection of crime and the prosecution of criminal cases constituting county charges. The words "by either of them" refer back to the district attorney and sheriff mentioned in the first line of the section. The expenses must be incurred by one of those two county officers to be a county charge under section 29601. "Incurred" in this context refers to an authorization for the expense made by one of the officers named. (*L.A. Warehouse Co.* v. *County of Los Angeles, supra*, 139 Cal.App. 368.) We conclude that Government Code section 29601 does not make the expense of safekeeping vehicles seized by the CHP as evidence of a crime county charges unless the district attorney or the sheriff has authorized such expenses.

Looking next to Government Code section 29602 we note that the expense for "other services in relation to criminal proceedings for which no specific compensation is prescribed by law" made county charges therein are not confined to those incurred by named officers as are the expenses referred to in Government Code section 29601. The "other services" referred to in section 29602 need not be provided by a county officer or any particular person. (*Gibson* v. *County of Sacramento, supra*, 37 Cal.App. 523, 527; *Hart Bros. Co.* v. *County of Los Angeles* (1939) 31 Cal.App.2d Supp. 766, 770.) In the *Hart* case the services in providing food and lodging for a trial jury were provided by a private company arranged for by the bailiff on orders of the municipal court and were held to be a proper charge against the county.

In *L.A. Warehouse Co.* v. *County of Los Angeles, supra*, 139 Cal.App. 368 the court held that the county could not be liable for "other services in relation to criminal proceedings" made county charges by Political Code section 4307 for services rendered after the criminal proceedings were terminated. By a parity of reasoning we believe that a county cannot be charged under that statute for services rendered prior to the

9

commencement of criminal proceedings. The criminal proceedings referred to in Government Code section 29602 are the proceedings in court. This is indicated by the court's statement in the *L.A. Warehouse* case (at p. 371) that when "such prosecution ended, in our opinion his [the district attorney's] authority to bind the county ended . . . ." That "other services in relation to criminal proceedings" was not intended to include the expenses of supporting persons charged or convicted of crime and committed to the county jail is indicated by the separate authorization made therefore, in Government Code section 29602. Similarly, the fact that Government Code section 29601 makes expenses incurred by the district attorney or sheriff "(1) In the detection of crime . . ." and "(2) In the prosecution of criminal cases, . . ." indicates that the Legislature differentiated between the detection of crime and the prosecution of criminal cases in the enactment of Government Code sections 29601 and 29602 and their predecessor statute, Political Code section 4307.

This interpretation is supported by the language in the *Gibson* case, *supra*, that the last part of Government Code section 29601 was designated as a substantive provision "to meet contingencies which . . . require the incurring of expense in the prosecution of criminal cases and which human prescience is unable to foresee."

Penal Code section 683 provides that "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment is known as a criminal action." Penal Code section 1427 provides in part that "[w]hen a complaint is presented to a judge of an inferior court of the commission of a public offense appearing to be triable in his court, he must, if satisfied therefrom that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, issue a warrant, for the arrest of the defendant." Penal Code section 806 provides in part that "[a] proceeding for the examination before a magistrate of a person on a charge of an offense originally triable in a superior court must be commenced by written complaint under oath subscribed by the complainant and filed with the magistrate." Penal Code section 917 provides that "[t]he grand jury may inquire into all public offenses committed or triable within the county and present them to the court by indictment." Under these statutes a criminal proceeding commences when the complaint charging the offense is filed with the court or magistrate or when the grand jury receives evidence for the purpose of proving a crime on which an indictment may be based.

Once a criminal proceeding commences, expenses necessarily incurred for services in relation to that proceeding are made county charges by Government Code section 29602. The cost of preserving and storing evidence to be used in such proceeding would be for a service relating to that proceeding and thus be a county charge under that section. However, the cost of storing evidence by a law enforcement agency in an investigation which does not lead to a criminal proceeding in a court or the grand jury

10

cannot be said to relate to a criminal proceeding any more than storing the same evidence after the judgment in the criminal case relates to the criminal proceeding. We do not think the Legislature intended that county responsibility for the cost of storing evidence seized in a criminal investigation was to depend upon whether sufficient evidence is found to prompt a criminal proceeding. Instead we believe the intention of the Legislature in enacting Government Code section 29602 was to impose on the county only those expenses necessarily incurred during the time the criminal proceeding was pending, i.e., following the commencing and prior to the termination of the criminal proceeding. Thus expenses incurred in the storage of evidence prior to the commencement of criminal proceedings are not a county charge under Government Code section 29602.

We conclude that when a member of the CHP seizes a vehicle or other item without a search warrant and arranges to have it transported and stored for safekeeping to be used as evidence in the investigation and possible prosecution of a crime, the county is responsible for the towing and storage charges from the time the criminal proceeding commences until it terminates and the state is responsible for such charges incurred at other times unless the district attorney or sheriff has authorized such expenses as county charges pursuant to Government Code section 29601.

By memorandum dated May 13, 1985, addressed to the Investigative Services Section of the CHP, this office advised that the responsibility for the impound of a vehicle pursuant to Vehicle Code section 23195 was on the county citing Government Code section 29602. Vehicle Code section 23195 provides:

"(a) Except as provided in subdivision (b), the interest of any registered owner of a motor vehicle which has been used in the commission of a violation of section 23152 or 23153 for which the owner was convicted, is subject to impoundment as provided in this section. Upon conviction the court may order the vehicle impounded at the registered owner's expense for not less than one or more than 30 days. . . ."

Thus impound of the vehicle under Vehicle Code section 23195 is done pursuant to an order of the trial court expressly authorized by that section. This would ordinarily make the expense a county charge under Government Code section 29602 under the rationale of the *Fursdon* case. However, we believe the words "at the registered owner's expense" in Vehicle Code section 23195 evidences a legislative intent that the expenses for impounding the vehicle are to be borne by the registered owner of the vehicle, not by the public. This express legislative direction regarding who pays the impounding costs for vehicles impounded pursuant to Vehicle Code section 23195 brings such expenses within the qualification annexed to Government Code section 29602 which reads "for which no

11

specific compensation is prescribed by law."  Thus such impound expenses are not a proper charge against the county under Government Code section 29602. Nevertheless, the garageman is protected for payment of towing and storage charges by his lien on the vehicle under Civil Code section 3068.1(a).  Thus, as in the case of vehicles removed from the highway and stored pursuant to Vehicle Code section 22651 et seq., the garageman must look to the owner of the vehicle and his lien on the vehicle for payment of towing and storage charges, not to the court or the public agency which implemented the court's impound order.  (See 68 Ops.Cal.Atty.Gen. 94, 95-97 (1985).)

When property seized by a peace officer as evidence of a crime is alleged to have been stolen or embezzled, its disposal is governed by the provisions of Penal Code sections 1407-1411.  These provisions prevent peace officers from returning property alleged to have been stolen or embezzled except on the order of a magistrate.  (*People* v. *Rogers* (1966) 241 Cal.App.2d 384, 390; *People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 189.)  Penal Code section 1409 provides that after notice and hearing and satisfactory proof of ownership, the magistrate may order the property returned to the owner "on his payment of the necessary expenses incurred in its preservation."  Thus where property seized by a peace officer as evidence of a crime is also alleged to have been stolen or embezzled, the law provides that the owner must pay the necessary expenses incurred in its preservation before he is entitled to the return of the property.  These expenses would include the costs of transporting and safe storage of the property.  However, this statutory authority for the peace officer to recover the necessary expenses incurred for preservation of the property does not change the responsibility of the peace officer to safely preserve the property until the magistrate orders its return to the owner.

Vehicle Code section 2400 provides that the commissioner of the CHP "shall enforce all laws regulating the operation of vehicles and the use of the highways" with specified exceptions.  Members of the CHP have the same powers and duties (see Veh. Code, § 2268).  Many of the laws referred to in Vehicle Code section 2400 define crimes. Thus in the enforcement of such laws, members of the CHP often investigate the commission of such crimes and make arrests for violations thereof.  Where a statute confers powers and duties in general terms, all powers and duties incidental and necessary to make such legislation effective are included by implication.  (*Clay* v. *Los Angeles* (1971) 21 Cal.App.3d 577, 585.)  The statutory duties and powers of the CHP include the authority to seize vehicles and other items which are evidence of the commission of a crime.

As we have noted, property seized by the CHP as evidence of a crime is held on behalf of the court having jurisdiction of the crime.  (*Gershenhorn* v. *Superior Court*, *supra*, 227 Cal.App.2d 361.)  It is the duty of the officer seizing property as evidence of a crime to safeguard such property pending such disposition thereof as the

12

court may direct. The officer may perform this duty by storing the property in some safe place such as an evidence locker or other storage facility provided by his employing agency. The property may be stored in similar facilities maintained by other agencies if arrangements for such storage can be made with those agencies. However, the responsibility for such storage remains with the seizing officer and his or her employing agency. This is as true with respect to members of the California Highway Patrol as it is with city police officers, deputy sheriffs or other law enforcement officers. Neither the seizing officer nor his or her employing agency can force another agency to assume their responsibility for the safekeeping of property seized as evidence. Evidence storage facilities are as much a part of the equipment needed to enforce the law as patrol offices, patrol vehicles and communication equipment. The authority to enforce the laws governing the operation of vehicles and the use of the highways implies the authority to obtain the equipment and facilities needed to carry out the enforcement responsibilities subject to laws governing the procedures for their acquisition including those concerning budgets, appropriations, contracts[1] and purchases.

Vehicles or other property may be seized by a peace officer in an investigation of a crime which fails to produce sufficient evidence to justify a criminal prosecution. In such a case the determination not to prosecute may be made either by the investigating peace officers or by the public prosecutor. In either case when the decision not to prosecute is made, the justification for seizing the property ends and the property should be returned to its owner. Similarly, vehicles or other property seized by a peace officer as evidence of a crime may, on further investigation, prove not to be evidence of such crime. For example, a vehicle seized by an officer who has reasonable cause to believe it was involved in a hit-and-run accident (see Veh. Code, § 22655) may learn as a result of laboratory analysis or other investigation that it was not the vehicle involved in the accident. At such time as the officer learns the property seized as evidence is not evidence of the crime, his justification for seizing the property ends and it should be returned to its owner. Of course, in either of the circumstances described if the property seized is alleged to have been stolen, the procedure required by Penal Code sections 1407-1411 should be followed before the property is returned to its owner.

The responsibility of the seizing officer to safeguard the property seized as evidence does not change when criminal proceedings are instituted and the cost of storing the evidence becomes a charge against the county. The seizing officer must continue to safeguard the property seized regardless of who is responsible for the costs of storage

---

[1] In 68 Ops. Cal. Atty. Gen. 94, 96 (1985) we discussed the authority of a member of the CHP to contract for services on behalf of the state. Vehicle Code section 42271 has since been called to our attention as possible additional authority for the CHP to contract for services. Since this possibility is outside the scope of the question presented, we do not address the issue.

because, as custodian of the property for the court, he must maintain his ability to make such disposition of the property as the court may direct.

*****