TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-902 |
| of | : | |
| | : | July 15, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE MAX E. ROBINSON, COUNTY COUNSEL, FRESNO COUNTY, has requested our opinion on the following questions concerning the costs of chemical testing necessary in "driving under the influence" cases:

1. What public entity bears the costs of the chemical testing?

2. Is $50 to be placed in the reimbursement account when the defendant is convicted even though no fine is imposed or collected?

3. Upon conviction, is each defendant to be assessed $50 for the chemical testing in addition to any base fine imposed?

4. Is a county administering the special reimbursement account required to account separately for each public entity: (1) the costs of the chemical testing, (2) whether $50 is set aside for each public entity, and (3) whether an additional penalty authorized by the county board of supervisors is collected from the defendant?

5. If a base fine and an additional penalty authorized by the county board of supervisors are paid to the county probation department as a condition of probation, is the county required to transfer $50 and deposit the additional penalty into the special reimbursement account?

CONCLUSIONS

1. With respect to the costs of chemical testing necessary in "driving under the influence" cases, the costs of the chemical testing are to be paid from the funds deposited in the special reimbursement account. If the account becomes exhausted, the public entity ordering the particular tests must bear the costs of such tests.

1.                                                                                       91-902

2.      The $50 is to be placed in the special reimbursement account when the defendant is convicted even though no fine is imposed or collected.

3.      Upon conviction, each defendant is not to be assessed $50 for the chemical testing in addition to any base fine imposed.

4.      A county administering the special reimbursement account is required to account separately for each public entity only when an additional penalty authorized by the county board of supervisors is collected.

5.    If a base fine and additional penalty authorized by a county board of supervisors are paid to a county probation department as a condition of probation, the county is required to transfer $50 and deposit the additional penalty into the special reimbursement account.

ANALYSIS

Penal Code section 1463.14[1] provides:

"(a)      Notwithstanding the provisions of Section 1463, of the moneys deposited with the county treasurer pursuant to Section 1463, fifty dollars ($50) for each conviction of a violation of Section 23103, 23104, 23152, or 23153 of the Vehicle Code shall be deposited in a special account which shall be used exclusively to pay  for the cost of performing for the county, or a city or special district within the county, analysis of blood, breath or urine for alcohol content or for the presence of drugs, or for services related to that testing.  The sum shall not exceed the reasonable cost of providing the services for which the sum is intended.

"On November 1 of each year, the treasurer of each county shall determine those moneys in the special account which were not expended during the preceding fiscal year, and shall transfer those moneys into the general fund of the county.  The county may retain an amount of that money equal to its administrative cost incurred pursuant to this section, and shall distribute the remainder pursuant to Section 1463.

"(b)      The Board of Supervisors of Contra Costa County may by resolution, authorize the imposition of a fifty dollar ($50) assessment by the court upon each defendant convicted of a violation of Section 23152 or 23153 of the Vehicle Code for deposit in the account from which the fifty dollar ($50) distribution specified in subdivision (a) is deducted.

"(c)      The board of supervisors of a county other than Contra Costa County may, by resolution, authorize an additional penalty upon each defendant convicted of a violation of Section 23152 or 23153 of the Vehicle Code, of an amount equal to the cost of testing for alcohol content, less the fifty dollars ($50) deposited as provided in subdivision (a).  The additional penalty  authorized by this subdivision shall be imposed only in those instances where the defendant has the ability to pay, but in no case shall the defendant be ordered to pay a penalty in excess of fifty dollars ($50). The penalty authorized shall be deposited directly with the county, or city or special district within the county, which performed the test. . . .

---

[1]All section references are to the Penal Code unless otherwise indicated.

".  .  .  .  .  .  .  .

"(d)     The Department of Justice shall promulgate rules and regulations to implement the provisions of this section."

The "moneys deposited with the county treasurer pursuant to Section 1463" (§ 1463.14, subd. (a)) are the fines collected for all criminal offenses, including the amounts of bail forfeited or deposited as cash bail subject to forfeiture.  Section 1463 provides for the distribution of the fines and forfeitures by formula as between the state, the counties, and the cities.  The "Section 23103, 23104, 23152, or 23153 of the Vehicle Code" violations are respectively for reckless driving, reckless driving and causing bodily injury, driving under the influence of alcohol or a drug, and driving under the influence of alcohol or a drug and causing bodily injury.  The Department of Justice has implemented section 1463.14 by regulation (Cal. Code Regs., tit. 11, §§ 997-998), including the following provision:

"Any forensic alcohol laboratory licensed under Title 17 of the California Code of Regulations which has performed for the county, or a city within the county, analysis of blood, breath or urine for alcohol content or for the presence of controlled substances, or for services related to such testing, shall submit its bill to the county auditor in conformity with the normal rules and/or regulations established by that auditor, or by any other administrative body within that county.  Such bills or charges shall be submitted no more frequently than once a month."  (Cal. Code Regs., tit. 11, § 997, subd. (d)).

This request for our opinion requires us to analyze section 1463.14 regarding the costs of the chemical testing necessary for "driving under the influence" (DUI) cases.

1.        The Public Entity Bearing The Costs of Testing

The first question presented concerns which public entity is to bear the costs of chemical testing for DUI offenses.  We conclude that so long as the reimbursement account is solvent, no particular public entity is to bear such costs.  The special fund is to do so on a first-come, first-served basis.

We believe this conclusion flows from both the purpose for and the language of subdivision (a) of section 1463.14.  Section 1463.14 was enacted in 1978 (Stats. 1978, ch. 790) to provide reimbursement for the costs of these chemical tests at a time when state funding for the testing program was being eliminated.  We have examined the legislative history of section 1463.14 and find that it was intended to provide a pool of money for the reimbursement of costs rather than to designate or prescribe a public entity's liability for such costs.

That this is so is evident from an examination of the language of section 1463.14.  Subdivision (a) of the statute provides only that from a larger pool of funds, all criminal fines and penalties (§ 1463), $50 for each DUI conviction is to be transferred to a special, smaller fund to pay for the chemical testing program.  Nothing in the language of subdivision (a) purports to attribute any particular $50 to a particular test or public entity which may have ordered the test.  In fact, such would defeat the purpose of the legislation.  This is so because not all persons suspected of a DUI offense will be convicted or even prosecuted.  Accordingly, to carry out the Legislature's intent, the pool must be a fungible source of non-earmarked funds available to reimburse testing costs irrespective of the agency which has ordered a specific test.  Otherwise, many tests will go unreimbursed.

It follows, therefore, that so long as funds are available in the special reimbursement account, no particular public entity is required to bear the costs of the DUI chemical tests. However, the special account may at times be inadequate in providing the required reimbursements. In such situation, we believe that the public agency ordering the chemical tests will be liable for their costs.[2] We do so based upon the analysis of sections 29601 and 29602 of the Government Code found in our opinion, 69 Ops.Cal.Atty.Gen. 36 (1986). In that opinion we concluded that as to expenses in a criminal case not ordered by either the district attorney or the sheriff (see Gov. Code, § 29601), and for which no other compensation is prescribed by law (see Gov. Code, § 29602), such expenses are county charges only during the actual pendency of a "criminal proceeding." We further concluded that a criminal proceeding is pending only after "the complaint charging the offense is filed with the court or magistrate or when the grand jury receives evidence for the purpose of proving a crime on which an indictment may be based" and "until it terminates." (*Id.* at pp. 43-44.)

Likewise, we believe that as to chemical testing in DUI cases, the public agency ordering the tests would be liable for those costs if the special account becomes exhausted. At such time there would be no "compensation . . . prescribed by law" (Gov. Code, § 29602) and no criminal proceeding yet commenced. Hence, the county would not be liable when the tests are ordered by a city or special district. (See *Irwin* v. *County of Yuba* (1898) 119 Cal. 686, 690; *L.A. Whse. Co.* v. *Los Angeles* (1934) 139 Cal.App. 368, 371; compare 53 Ops.Cal.Atty.Gen. 113 (1970) and 2 Ops.Cal.Atty.Gen. 69 (1943).)

In answer to the first question, therefore, we conclude that with respect to the costs of chemical testing necessary in DUI cases, the special reimbursement fund bears such costs, and if it becomes exhausted, the public entity ordering the tests is responsible for the costs.

2.      Where No Fine Is Imposed or Collected

We are next asked whether $50 is to be deposited in the special reimbursement account when a defendant is convicted but no fine is imposed or collected. We conclude that the answer is "yes."

The pertinent language of section 1463.14, subdivision (a) is:

"Notwithstanding the provisions of Section 1463, of the moneys deposited with the county treasurer pursuant of Section 1463, fifty dollars ($50) for each conviction of a violation of Section 23103, 23104, 23152, or 23153 of the Vehicle Code shall be deposited in a special account . . . ."

It is to be recalled that section 1463 provides for the deposit with the county treasurer of the penalties, fines, and forfeitures resulting from *all* criminal offenses. Accordingly, the funds collected pursuant to section 1463 constitute a general pool of deposits, not merely fines collected

---

[2]This conclusion will require a determination as to the accounting period to determine solvency of the special fund. Whether this is done on a monthly, quarterly, or other basis would appear to fall within the discretion of the county, unless until the Department of Justice issues an implementing regulation.

Also, as to arrests for DUI offenses by state highway patrol officers, we believe that arrests made within a city are to be attributed to that city and those made in unincorporated territory are to be attributed to the county. (See § 1463, subs. (c) and (e).)

for DUI offenses. Subdivision (a) of section 1463.14 authorizes a transfer from the general pool of funds (§ 1463) of $50 "for each conviction" of a DUI offense. Thus it is the fact of a conviction that triggers the $50 deposit, not the fact that a fine has been imposed or collected.

This conclusion is reinforced by contrasting section 1463.14 with section 1463.16 relating to the special account for county alcohol programs. Subdivisions (a) and (b) of the latter statute state:

"(a)      Notwithstanding section 1203.1 or 1463, fifty dollars ($50) of each fine for each conviction of a violation of Section 23103, 23104, 23152, or 23153 of the Vehicle Code shall be deposited with the county treasurer in a special account . . . .

"(b)      In a county of the 1st, 2nd, 3rd, or 15th class, notwithstanding Section 1463, of the moneys deposited with the county treasurer pursuant to Section 1463, fifty dollars ($50) for each conviction of a violation of section 23103, 23104, 23152, or 23153 of the Vehicle Code shall be deposited in a special account . . . ."

Accordingly, when the Legislature has intended the $50 to be deposited (1) based upon the collection of a fine or (2) based upon the fact of conviction, it has made such a distinction and has so provided.

In answer to the second question, we conclude that $50 is to be placed in the special reimbursement account when the defendant is convicted even though no fine is imposed or collected.

3.      An Additional $50 Assessment

We are also asked whether each defendant convicted of a DUI offense is to be assessed an additional $50 pursuant to subdivision (a) of section 1463.14 over and above any base fine imposed by the court. As defined in section 1463, a "base fine" is the component of the "[t]otal fine or forfeiture" collected upon a conviction or forfeiture of bail and "upon which the state penalty and additional county penalty is calculated." (§ 1463, subd. (l).)

There is nothing in subdivision (a) of section 1463.14 which imposes an assessment upon a defendant. As discussed above, subdivision (a) of section 1463.14 provides for a transfer of $50 for each DUI conviction from the pool of funds established pursuant to section 1463.

Accordingly, a defendant convicted of a DUI offense is not to be assessed an additional $50 for chemical testing pursuant to subdivision (a) of section 1463.14 over and above any base fine imposed upon conviction.

4.      Separate Accounts For Each Public Entity

The fourth question posed is whether section 1463.14 contemplates that a separate account will be set up for each county, city, and special district specifying (1) the costs of the chemical tests, (2) whether $50 is set aside for the public entity pursuant to subdivision (a) of section 1463.14, and (3) whether an additional penalty is collected from the defendant under section 1463.14, subdivision (c).

As already discussed, we view section 1463.14 as creating a pool of fungible and non-earmarked funds from which to pay for chemical testing. Hence, we do not believe that a particular $50 transferred into the reimbursement fund under subdivision (a) of the statute is to be

attributed to a particular defendant or chemical test.  However, if the county board of supervisors has exercised it option pursuant to subdivision (c) to assess an additional penalty, a different conclusion is reached.  Such additional penalty "shall be deposited directly with the county, or city or special district within the county, which performed the test . . . ." (§ 1463.14, subd. (c).)  In that case, some form of tracking will be necessary with respect to the particular chemical tests and individual defendants.  We view the mechanics of such tracking to be essentially an administrative matter, dependent upon the number of public entities, the number of laboratories used, and the costs of the testing.

Additionally, we note the second paragraph of subdivision (a) of section 1463.14: "[T]hose moneys in the special account which were not expended during the preceding year" shall be transferred "into the general fund of the county."  After deducting an administrative cost, the county is to "distribute the remainder pursuant to Section 1463."  Again, some form of accounting will be required on the part of the courts and the county to permit such a distribution pursuant to the terms of section 1463.

In answer to the fourth question, we conclude that a county administering the special reimbursement account is required to account separately for each public entity only when an additional penalty is collected as authorized by the county board of supervisors under subdivision (c) of section 1463.14.

5.      Disposition Of Funds When Probation Granted

The final question presents the situation where a defendant convicted of a DUI offense pays to the county probation department as a condition of probation the base fine and an additional penalty authorized by the county board of supervisors.  Must the county transfer $50 and deposit the additional penalty into the special reimbursement account or may it deposit such amounts in the county's general fund?

The statute requiring analysis is section 1203.1.  It provides in part:

"Notwithstanding any other provisions of law to the contrary, except as provided in Sections 13967 and 13967.5 of the Government Code and Sections 1202.4, 1203.04, 1463.16, paragraph (1) of subdivision (a) of Section 1463.18, and Section 1464, all fines collected by a county probation officer in any of the courts of this state, as a condition of the granting of probation or as a part of the terms of probation, shall be paid into the county treasury and placed in the general fund for the use and benefit of the county."

Here, the base fine is paid by the defendant for the DUI offense and "collected by a county probation officer . . . as a condition of the granting of probation."  Section 1203.1 directs that it be "paid into the county treasury and placed in the general fund."

The base fine in question thus will not be deposited into the county treasury pursuant section 1463, but rather pursuant to section 1203.1.  The $50 transfer under subdivision (a) of section 1463.14 for the special reimbursement fund is only made from "moneys deposited with the county treasurer pursuant to section 1463."  While the base fine paid in the present circumstances is placed in the county's general fund "[n]othwithstanding any other provisions of law" (§ 12031), a $50 transfer must still occur from the section 1463 pool of funds pursuant to subdivision (a) of section 1463.14, since the latter transfer is based upon the defendant's "conviction" rather than whether any fine is paid.

With respect to the additional penalty authorized by the county board of supervisors (§ 1463.14, subd. (c)), we do not believe that it constitutes a "fine" subject to the directive of section 1203.1. In 62 Ops.Cal.Atty.Gen. 249 (1974), we concluded that section 1203.1 requires only the deposit of the actual fines and that where there are additional penalties assessed, the penalties are to be deposited in the specific funds provided by law for such penalties. We reaffirm our prior opinion and apply it here.

Accordingly, the penalty assessed against a defendant pursuant to subdivision (c) of section 1463.14 as authorized by a county board of supervisors would not be subject to deposit in the county's general fund under the terms of section 1203.1.

We conclude in answer to the fifth question that section 1203.1 does not preclude the transfer of $50 to the special reimbursement account from the section 1463 pool of funds or the deposit of the additional penalty assessed pursuant to section 1463.14, subdivision (c).

* * * * *